# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

FRUTERA AGROSAN EXPORT SPA,            )
                                       )
      Plaintiff,                      )
                                       )
      v.                              )    C.A. 23-cv-000248-SRF
                                       )
GT USA WILMINGTON, LLC, *et. al.*,     )
                                       )
      Defendants.                     )

---

Arthur D. Kuhl, REGER RISSO & DARNALL, LLP, Wilmington, DE; Stephen J. Galati, MATTIONI LTD., Philadelphia, PA.

      Attorneys for Plaintiff.

David Phillip Primack, MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP, Wilmington, DE; Joseph G. Grasso, Leah Mantei, Susan M. Kennedy, WIGGIN AND DANA, LLP, Philadelphia, PA.

      Attorneys for Defendant.

---

## **MEMORANDUM OPINION**

September 27, 2024
Wilmington, Delaware

FALLON, U.S. MAGISTRATE JUDGE:

The present case is a maritime cargo shipping action brought by Frutera Agrosan Export SPA ("Frutera") against Defendant GT USA Wilmington, LLC ("GT") and various other Defendants who do not join the present motion.

Presently before the court is GT's motion to dismiss Counts III through VII of Frutera's first amended complaint ("FAC") (D.I. 21) pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. (D.I. 25)[1] For the reasons that follow, GT's motion is **DENIED**.

## I.    JURISDICTION

GT filed the present motion to dismiss on August 14, 2023, seeking to dismiss all counts asserted against it, Counts III through VII of the FAC. (D.I. 25) The motion was fully briefed on September 12, 2023, and is ripe for review. (D.I. 33) The court has jurisdiction over these claims, pursuant to 28 U.S.C. § 1333(1), as this is an admiralty and maritime claim. On October 4, 2023, the District Judge referred this case to the undersigned Magistrate Judge. (D.I. 36) On October 19, 2023, the parties consented to the jurisdiction of the undersigned Magistrate Judge to conduct all proceedings in this case, including trial, the entry of final judgment, and all post-trial proceedings, in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (D.I. 38)

## II.    BACKGROUND

This case arises from a transaction to ship fresh grapes from Chile to Wilmington, Delaware. (*E.g.* D.I. 21 at ¶ 5) Frutera is a shipper and exporter organized in Chile. (*See id.* at ¶ 1) GT operates and manages cargo at the Port of Wilmington. (*Id.* at ¶ 19)

Grapes are perishable food items which require specific temperature and atmospheric conditions during transit and storage. (*Id.* at ¶ 6) Plaintiff alleges it was GT's responsibility to

---

[1] The briefing submitted for the motion can be found at D.I. 26, D.I. 29, and D.I. 33.

warehouse, fumigate, and deliver the grapes to Frutera's contract consignees following their delivery in Wilmington from Chile.  (*Id.* at ¶ 20)  Frutera avers that GT failed to fumigate and timely deliver sixteen shipments of grapes in March and April of 2022.  (*Id.* at ¶¶ 31–46; *see id.* at ¶ 7)  Consequently, GT's alleged failure to fulfill its obligations resulted in damage to the grapes and caused Frutera to sustain monetary losses in excess of $400,000.  (*See id.* at ¶ 47)

Frutera filed this case in the District of Delaware on March 7, 2023.  (D.I. 1)  In addition to GT, Frutera named the following Defendants: Trans Global Shipping N.V., B&M Agencia Maritima S.A., and Seatrade Group N.V.[2] (logistic companies and carriers); Sole Seas Corp., Ecuadorian Line, Inc., Inaugua Shipping, Ltd., Swedish Stream Shipping Co. Ltd., Hellas Stream Shipping Co., Ltd., and Autumn Stream Shipping Co., Ltd. (vessel owners); M/V Emerald, M/V Duncan Island, M/V Swedish Stream, M/V Hellas Stream, and M/V Autumn Stream (vessels) (collectively "Carrier Defendants").  (D.I. 21 at ¶¶ 12–15)  The terms of the contracts between the Carrier Defendants and Frutera at issue in this case are memorialized in multiple Sea Waybills of Lading.  (*See id.* at ¶ 51; *see also id.* Exs. A, B; D.I. 26 Ex. A ("Sea Waybills"))  GT is not a signatory to the Sea Waybills, and its duty to fumigate, store, and deliver Frutera's grape shipments is alleged by Plaintiff to be based on a separate contract with the carriers and consignees.  (*See* D.I. 21 at ¶¶ 61–62)

Frutera amended its complaint on July 18, 2023, the FAC pleads five Counts against GT: Count III asserts GT breached its duties as a marine terminal operator, warehouseman, and bailee by failing to care for the grapes, provide for fumigation, and promptly deliver the grapes; Count IV asserts negligence for the same conduct; Count V asserts breach of contract for the same

---

[2] Seatrade Group N.V. replaced Seatrade Groningen B.V. as a party on December 15, 2023. (D.I. 50)

conduct; Count VI asserts breach of duties as a logistics brokers/service provider for the same conduct; and Count VII asserts breach of warranty of workmanlike services for the same conduct. (*Id.* at ¶¶ 60–80)[3]

This case is one of five similar cases filed initially in the Eastern District of Pennsylvania by Chilean grape shippers against carriers and receiving ports. (D.I. 26 at 1 n.1) The other four matters all had pending motions to dismiss in the Eastern District of Pennsylvania. On April 8, 2024, subsequent to the completion of briefing on this motion, the Eastern District of Pennsylvania transferred the cases, *sua sponte*, to the Southern District of New York. The court determined it was unnecessary to address the merits of the motions to dismiss, given its decision to transfer. *See Frutera Agrosan Exp. S.A. v. MSC Mediterranean Shipping Co. SA, et al.*, C.A. No. 23-CV-885-MRP, D.I. 45 (E.D. Pa. Mar. 29, 2024).[4] Once in the Southern District, on May 30, 2024, five related cases were consolidated into one docket, No. 24-CV-2643, and the court ordered a new round of briefing on the motions to dismiss. *See Frutera Agrosan Exp. S.A. v. MSC Mediterranean Shipping Co. SA, et al.*, C.A. No. 24-CV-2643, D.I. 59 (S.D.N.Y. May 30, 2024). Briefing was completed on July 25, 2024, and is now pending a decision. (*Id.* at D.I. 72)

## III.   LEGAL STANDARD

Rule 12(b)(6) permits a party to seek dismissal of a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a complaint must contain a "short and plain statement

---

[3] Counts I through II have been asserted against the carrier Defendants only. (*See id.* at ¶¶ 50–59) Plaintiff states that only Count I is based on the bills of lading. (D.I. 29 at 8)

[4] *See also C.H. Robinson Co. Inc. v MSC Mediterranean Shipping Co. SA*, et al., C.A. No. 24-CV-2649, D.I. 26 (S.D.N.Y. Apr. 8, 2024); *Dole S.A. v MSC Mediterranean Shipping Co. SA, et al.*, C.A. No. 24-CV-2651, D.I. 40 (S.D.N.Y. Apr. 8, 2024); *C.H. Robinson Co. Inc. v. MSC Mediterranean Shipping Co. SA*, et al., C.A. No. 24-CV-2653, D.I. 36 (S.D.N.Y. Apr. 8, 2024)

of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required, the complaint must set forth sufficient factual matter, accepted as true in the light most favorable to the plaintiff, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A claim is facially plausible when the factual allegations allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 663; *Twombly*, 550 U.S. at 555–56.

The court's determination is not whether the non-moving party "will ultimately prevail," but whether that party is "entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (cleaned up). This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the necessary element]." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). "[A] complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Id.* at 231.

## IV. DISCUSSION

GT makes two arguments in support of their motion to dismiss. First, GT asserts that in deciding this motion the court may consider the Sea Waybills' terms and conditions it attached to the opening brief because they are incorporated by reference into the complaint. (D.I. 26 at 7–10; D.I. 26 Ex. A) Second, the Carriage of Goods by Sea Act ("COGSA") preempts all of Frutera's state and common law claims asserted against GT, based on the terms and conditions of the Sea Waybills. (*Id.* at 10–19)

### A. Consideration of the Sea Waybills' Terms and Conditions

"In evaluating a motion to dismiss, [the court] may consider documents that are attached to or submitted with the complaint . . . and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (internal quotations omitted).

Defendant argues that the court can consider the attached Sea Waybills' terms and conditions without converting this motion to dismiss to a motion for summary judgment because they are incorporated by reference into the FAC. (*Id.* at 7)  Defendant also argues that there are additional terms to the contract that the Plaintiff omitted from its complaint.  Frutera does not respond to this argument in its answering brief. (*See* D.I. 30)  For purposes of the instant motion, the court considers the Sea Waybills incorporated by reference.

### B. Preemption by COGSA

The Carriage of Goods by Sea Act ("COGSA") is a federal law governing the international shipment of goods to or from United States ports.  46 U.S.C. § 30702(a).  COGSA preempts all state and common law claims and limits a carrier's liability.  *Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 28–29 (2004).  The United States Supreme Court has held that COGSA preempts state law because the application of state law would "undermine the uniformity of general maritime law" and "confusion and inefficiency [would] inevitably result if more than one body of law govern[ed] a given contract's meaning." *Id.*

COGSA applies to all bills of lading that concern carriage of goods by sea to or from ports in the United States. *E.g. Ferrostaal, Inc. v. M/V Sea Phoenix*, 447 F.3d 212, 218 (3d Cir. 2006).  By default, "COGSA applies from tackle to tackle, meaning the period of time when the

goods are loaded on to the time when they are discharged from the ship." *M3 Midstream LLC v. S. Jersey Port Corp.*, 1 F. Supp. 3d 289, 294 (D.N.J. 2014) (quotations omitted). But the carrier may extend COGSA protections to its onshore agents through the inclusion of a "Himalaya clause" in the bill of lading. *See Kirby*, 543 U.S. at 28–29. The addition of Himalaya clause can contractually extend maritime liability limitations to downstream parties expected to take part in the contract's execution. *In re Imperial Towing, Inc.*, 2012 WL 5409831, at *3 (W.D. Pa. Nov. 6, 2012). To determine whether COGSA should be extended beyond the vessel's tackles, courts will review the bill of lading, which is the operative contract for the transportation of goods, to determine the scope of the agreement contracted between the parties. *See Kirby*, 543 U.S. at 21 (2004).

GT argues that COGSA governs the Sea Waybills and provides an exclusive remedy for damage to cargo, preempting Counts III through VII of the FAC, which are state and common law claims. (D.I. 26 at 10–11) Additionally, GT asserts that the Sea Waybills' terms and conditions show that COGSA was meant to apply to the pre-loading and post-discharge periods via a Himalaya clause. (*Id.* at 11–18) Specifically, GT relies on § 4(8) of the Sea Waybills, which states that:

> The Carrier shall be entitled to subcontract on any terms the whole or any part of the carriage. Anything done in accordance with this clause or any delay arising therefrom shall be deemed to be within the scope of the carriage herein and the performance of the Contract by the Carrier, and shall not be deemed as a deviation. The terms and conditions of Contract and the ensuing Sea Way Bill of Lading shall continuously cover the entire carriage.

(Sea Waybills § 4(8))

GT further cites § 5, which states that:

> [The] Carrier shall be responsible for the custody of the goods from their receipt up to their delivery, whether they occur in the ports or in any other place (of receipt or delivery), and shall be responsible of their loss, damage or delay, in accordance to

7

the applicable provisions of § 3 "Contract for the carriage of goods by sea" of Title
V of the Book Third of the Chilean Code of Commerce, including Carrier's right to
limit its liability in the event of loss, damage or delay.

(*Id.* § 5)

GT argues that these provisions show the intent of the Sea Waybills' signatories to extend
COGSA coverage to all downstream entities, including GT. (D.I. 26 at 15)  Furthermore, GT
contends that "delivery," as the term appears in Sea Waybills § 5, refers to transference of the
grape shipments to the consignees, not transference of the grape shipments from the Carrier
Defendants to GT. (*Id.*)  Therefore, the Defendant argues that COGSA applies to GT via a
Himalaya clause within the Sea Waybills, making COGSA the operative law, preempting
Plaintiff's state law claims. (*E.g. id.* at 17)

Frutera responds that GT is not a signatory to the Sea Waybills and may not rely on their
terms. (D.I. 29 at 7)  Frutera also argues that "delivery" is a maritime contract term of art, and
factual development is necessary to determine when the grape shipments were "delivered" under
the terms of the Sea Waybills. (*Id.* at 6 n.7)  Furthermore, Frutera asserts that GT is classified as
a shoreside service provider, and argues that shoreside service providers are not covered by
COGSA. (*Id.* at 11–12)

Next, Frutera states that the Sea Waybills do not incorporate COGSA via a clause
paramount, because the Sea Waybills explicitly incorporate Chilean law instead. (*Id.* at 16–17;
*see also* Sea Waybills § 10)  Finally, the Sea Waybills do not contain a Himalaya clause, and
even if they did, it would not extend to GT, whose actions were not contemplated in the drafting
of the Sea Waybills, as a nonparty shoreside services provider. (*See id.* at 17–18)

The parties ask the court to make determinations inappropriate on a motion to dismiss.
Specifically, GT asks the court to determine that COGSA applies to the Sea Waybills, that the

8

Sea Waybills §§ 4.8 and 5 create a Himalaya clause, and then to apply its terms to GT, even though it is not a party to the Sea Waybills. (D.I. 26 at 13–15) GT also asks the court to interpret the term "delivery" in the Sea Waybills to mean delivery to the consignees, rather than delivery at port. (*Id.* at 15)

In addition, Frutera asks the court to interpret the Sea Waybills to find that they incorporate Chilean law and to find that §§ 4.8 and 5 do not create a Himalaya clause that extends downstream to GT. (D.I. 29 at 14–19)

The arguments submitted by both parties revolve around "questions [that] involve disputed issues of fact and contract interpretation not suitable to resolution on a motion to dismiss[.]" *Univ. Am. Corp. v. Partners Healthcare Sols. Holdings, L.P.*, 61 F. Supp. 3d 391, 400 (D. Del. 2014); *see also Winfield v. Eloxx Pharms., Inc.,* 2020 WL 1333008, at *1 (D. Del. Mar. 23, 2020) ("[I]ssues of contract interpretation raised by Defendants cannot be resolved against Plaintiff on a motion to dismiss."). In determining if Chilean law or COGSA is meant to apply to the Sea Waybills, the court must assess the contracting parties' intent, which is a fact question. *CoorsTek Korea Ltd. v. Loomis Prods. Co.*, 586 F. Supp. 3d 331, 336 (D. Del. 2022) (declining to dismiss because a question of fact existed regarding the contracting parties' intent).

Furthermore, the parties provide no case authority for making these determinations at the motion to dismiss stage. At this stage in the proceedings, the court, viewing the pleadings in the light most favorable to the Plaintiff assess whether the, "[f]actual allegations [are] enough to raise a right to relief above the speculative level," though the Plaintiff only needs to "nudge[ ] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555, 569. Furthermore, the court must accept the facts as set forth in the complaint, even if actual proof of those facts is improbable, and that a recovery is very remote and unlikely. *Id.* at 557.

Nearly all of the cases discussed by the parties, and relied on by the Defendant, were decided after factfinding was complete. *E.g. Kirby*, 543 U.S. at 14 (summary judgment); *Ferrostaal*, 447 F.3d at 212 (summary judgment); *Polo Ralph Lauren, L.P. v. Tropical Shipping & Const. Co., Ltd* , 215 F.3d 1217 (11th Cir. 2000) (partial summary judgment); *La Salle Mach. Tool, Inc. v. Maher Terminals, Inc.*, 611 F.2d 56 (4th Cir. 1979) (on appeal from final judgment). The cases that were decided before factfinding took place are outside of the Third Circuit and contain distinguishable facts. *E.g. Diamond v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 2904640, at *5 (E.D. Cal. July 26, 2010) (interpreting a contract that included an unambiguous clause paramount extending COGSA liability); *Alpina Ins. Co., Ltd. v. Trans Am. Trucking Servs., Inc.*, 2004 WL 1673310, at *3 (S.D.N.Y. July 28, 2004) (motions to dismiss converted to motions for summary judgment); *Cosa Exp. Co. v. Transamerican Freight Lines, Inc.*, 1968 A.M.C. 1351, 1357 (N.Y. Sup. Ct.) (finding that a stevedore was not covered by the bill of lading on a motion to dismiss on account of defenses asserted in the defendants' answer when there was no potential Himalaya clause at issue).

At this point in the proceedings, Frutera must only plead a plausible claim for relief. *E.g. Iqbal*, 556 U.S. at 678–79.   GT attempts to argue factual matters, such as when the fumigation process would typically take place in a "delivery," as evidence their services were part of the carriage.  (D.I. 33 7–8)  These additional fact arguments, while proper subjects of discovery and summary judgment, are improper at the motion to dismiss stage. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1424–25 (when ruling on a motion to dismiss, a district court is "not permitted to go beyond the facts alleged in the Complaint and the documents on which the claims made therein were based").

Moreover, the Defendant noted that the *Kirby* court explicitly rejected the specific language requirement for a Himalaya clause, noting: "contract for carriage of goods by sea must be construed . . . by [its] terms and consistent with the intent of the parties." (D.I. 33 at 10); *Kirby*, 543 U.S. at 16, 31–32. This supports the finding that a decision on the applicability of the Himalaya clause is premature, as the intent of the parties in entering the Sea Waybills is undeveloped and currently unknown. Furthermore, the respective positions of the Carrier Defendants, who are parties to the Sea Waybills, are presently unknown, as they have not joined in GT's motion.

Therefore, GT's arguments are best left for determination upon a more fully developed factual record.

## V.   CONCLUSION

Accordingly, the court **DENIES** GT's motion to dismiss Counts III through VII of Frutera's First Amended Complaint pursuant to Rule 12(b)(6). An Order accompanying this Memorandum shall issue.


Dated:  September 27, 2024